# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

RICKY EARL WHITE,                                                                     PETITIONER
ADC #142538

v.                                5:14CV00166-JM-JJV

RAY HOBBS, Director                                              RESPONDENT
Arkansas Department of Correction

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

    1.      Why the record made before the Magistrate Judge is inadequate.

    2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

    3.      The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## DISPOSITION

### I. BACKGROUND

On August 13 2008, a Pulaski County jury convicted Petitioner, Ricky Earl White, of murder in the first degree. (Doc. No. 1.) The facts underlying Mr. White's conviction and sentence are as follows:

> The trial record reveals that, in the early morning hours of February 2, 2008, Penze Wine was shot and killed in the parking lot of a recording studio in Southwest Little Rock. Gary Wilkins, a friend of Wine's, testified that he, Wine, Carlos Pace, and Eugene Harris were at the recording studio on the night in question. Wilkins further testified that neither he nor anyone he was with had a firearm, that he looked out the door and saw Wine outside by Wine's car, and that a white Cadillac was behind Wine's car. According to Wilkins, he looked away and closed the door, but upon hearing "bam," he looked back out and saw Wine on the ground, and White, who he knew as "Big Baby," get in the white Cadillac and drive off. Pace testified that he was in Wine's car with Wine when they struck White's car upon backing out. According to Pace, he and Wine examined White's car and found no damage, but Wine offered to pay for damages anyway. Pace testified that there was no argument, and the "[n]ext thing I know I heard a shot and saw Mr. Wine on the ground." Pace testified that he, Wine, and White were the only persons present when Wine was shot. Pace identified White as the person who shot Wine and testified that after shooting Wine, White said nothing and drove off.

> Proffered testimony of Wilkins showed that he had a conviction for possession of a controlled substance. Proffered testimony of Pace showed that he was on probation and had to abstain from consuming alcohol. Pace confirmed that the gathering at the studio was because Wine was about to leave and serve time in Arizona. Anita Ray testified, "I've known [White] to carry a .380 gun." She further testified that the police seized one pistol, but "I know that Ricky [White] carries a gun. He doesn't

2

leave the house without it." She also testified, "I know he has a .380 and I knew he had it around the time of February 2nd." Latonya Miller, who lived across the street from the recording studio, testified that she witnessed the shooting. She heard an argument or discussion outside and saw a white Cadillac, and two men. One of the men was facing away from her, and the other man one [sic] was facing her and holding up his hands. She then saw "fire" and one man fall and hit the ground. According to Miller, the other man got in the Cadillac and drove away. Miller recognized the Cadillac as White's car and testified that she saw White in the parking lot on the night in question.

Testimony at trial revealed that a single .380 casing was retrieved from the scene and that a single .380 bullet killed Wine. Testimony of Dr. Stephen Erickson was proffered to show that at the time of his death, Wine had a trace amount of cocaine and an alcohol-blood level of .18 grams percent in his system.

White testified at the Rule 37 hearing that when he approached Wine's vehicle, "some words were exchanged." He testified further that he and "the passenger" had a prior conflict, and that gestures were used indicating that he [White] needed to get away from the car if he did not wish to be harmed. According to White, he overheard the passenger tell the driver to back up and hit his car. White testified that the driver did so, and he (White) jumped out of the way. According to White, at this point, the driver and passenger got out of the car and began to argue with him. White then testified that, "Mr. Wine produced a gun and I grabbed him and we went to tussling and the gun went off and he got shot. And when he fell I got in my car and left."

*White,* 2013 Ark. 171 at 2-6.

Mr. White was sentenced as a habitual offender to life imprisonment in the Arkansas Department of Correction, plus fifteen years for using a firearm to commit the murder. (Doc. No. 1.) On direct appeal, Mr. White raised only one claim - that the circuit judge abused his discretion in admitting testimony of White's possession of .380-caliber handgun. *White v. State,* 2009 Ark. 374 (2009). The Arkansas Supreme Court affirmed.

Mr. White timely filed a petition for post-conviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure, raising the following grounds for relief: 1) counsel improperly failed to raise the defense of justification, or self defense; 2) counsel failed to properly prepare for trial; 3) counsel failed to competently prosecute a defense; 4) counsel failed to allow Mr. White to testify in his own defense. (Doc. No. 1 at 10-12.) After a hearing, the trial court denied Mr. White's petition

in a written order entered April 25, 2011. (*Id.* at 15-20.) Among other things, the trial court did "find that Petitioner should have been allowed to testify on his own behalf, [but] it [did] not however find that his testimony would have changed the outcome of his trial." (*Id.* at 19.) Additionally, the court concluded that counsel's change in trial strategy was "not grounds for post-conviction relief," citing *Neal v. State*, 270 Ark. 442 (1980). (*Id*. at 17.)

Mr. White appealed to the Arkansas Supreme Court, raising two points: 1) the circuit court erred by denying his petition because his attorney, without consulting him, changed the trial strategy; and 2) he was denied his constitutional right to testify. (Doc. No. 1 at 22.)

Two years later, a divided Arkansas Supreme Court affirmed. *White v. State,* 2013 Ark. 171 (2013). Although finding White was wrongfully denied his right to testify and to pursue a justification defense, the Court held that "had the defense of justification been pursued, and had White testified, there is no reasonable probability that the fact-finder would have reached a different outcome." *Id.* at 2.

Mr. White now seeks relief through the instant federal Petition for Writ of Habeas Corpus, filed April 30, 2014. White's Petition states, "Trial counsel's assistance was deficient to the point that it denied White his constitutional right to testify in his own behalf, *Rock v. Ark.*, 483 U.S. 44 (1987), and denied him an opportunity to have his case tried by a jury. *United States v. Conic*, 466 U.S. 648 (1984)." (Doc. No 1 at 3.) On the face of the Petition, Mr. White's second ground is misleading. But taken as a whole, it appears Mr. White's claim that he was denied a trial by jury derives from the dissent in *White,* 2013 Ark. 171 at 8. The dissent stated, "[Counsel's] deficient performance denied Mr. White his fundamental right to have *his* case tried to a jury." *Id.* (Emphasis

in original.)¹ Accordingly, this Court construes that Mr. White intended to raise both of the claims raised to the Arkansas Supreme Court. Nevertheless, after careful review of the Petition and Response, for the following reasons the Court concludes the Petition is without merit and should be DISMISSED.

## II.     ANALYSIS

Mr. White's allegations that his attorney was ineffective because she changed strategy without consulting him and prevented him from exercising his constitutional right to testify were properly raised and addressed on their merits by the Arkansas Supreme Court. In the interests of finality and federalism, federal habeas courts, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are restricted to a "limited and deferential review of underlying state court decisions." *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004). Under the AEDPA, federal review of underlying state court decisions are limited because federal courts may only grant habeas relief if the claim was adjudicated on the merits in the state court proceeding and the state court's decision:

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

Under subsection (d)(1), a state court decision is "contrary to" federal law if the state court arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of

---

¹Curiously, the dissent cites *Calnan v. State*, 310 Ark. 744, but unlike White, *Calnan* was in fact denied a trial by a jury. *Calnan* at 746-47.

materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); see also *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007). A decision involves an unreasonable application of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under subsection (d)(2), a state court decision will be based on an "unreasonable determination of the facts in light of the evidence presented . . . only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003). Such is not the case here.

Although Mr. White's claims are troubling, the Arkansas Supreme Court correctly applied the standard set forth in the United States Supreme Court decision in *Strickland v. Washington*, 466 U.S. 668 (1984). The court concluded that, while Mr. White's counsel was deficient, he failed to show that there was a reasonable probability that the outcome of the trial would have been different. *White,* 2013 Ark. 171. The court held that Mr. White did not prove he was prejudiced by the alleged errors of counsel, *Id.*, and this holding is properly supported.

*Strickland* establishes a two-element test for ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687.

Under the two-prong *Strickland* test, the benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of

the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. As the Arkansas Supreme Court correctly found, Mr. White failed to reach that mark. Specifically, the court held that Mr. White was not prejudiced by his counsel's ineffectiveness as he "failed to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors." *White,* 2013 Ark. 171 at 6.

The court explained:

In order to satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Sartin,* 2012 Ark. 155, 400 S.W.3d 694. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*

White asserts that he made an explicit demand to testify and that this right was denied him by his attorney, Sharon Kiel. Kiel testified at the hearing on White's Rule 37 petition that she was aware that White wished to testify and that he wished to present a justification defense. She further testified that White made himself clear to her regarding his desire to testify and that his understanding on the morning of trial was that they would pursue a justification defense that would include his testimony. According to Kiel, on the morning of trial, without consulting White, she changed the trial plan to a defense of reasonable doubt that White was the killer. This meant White would not testify. Kiel testified that the decision was hers alone and that she took away his ability to testify. The circuit court found that "[p]etitioner should have been allowed to testify on his own behalf, [but the court] does not however find that his testimony would have changed the outcome of his trial." The circuit court thus found that White failed to satisfy the second prong of the *Strickland* test. In other words, the circuit court found that White failed to show that there existed a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *See Sartin, supra.*

*Id.* at 2-4.

The court ultimately concluded, "Upon review of the entire evidence, we cannot say that we are left with a definite and firm conviction that the circuit court made a mistake when it found that White failed to show that there is a reasonable probability that the fact-finder's decision would have

been different absent counsel's errors. We cannot say that the circuit court's findings were clearly erroneous." *Id.* at 6-7.

So after careful review of the Petition and Response, this Court concludes that the state's highest court's findings did not entail an unreasonable application of federal law on any point. In reviewing an ineffective assistance claim under the "unreasonable application" clause of § 2254(d)(1), "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The Court notes that Mr. White's counsel has since reported herself to the Arkansas Office of the Committee on Professional Conduct. While this further adds credence to Mr. White's allegations, both the trial court and the Arkansas Supreme Court recognized that counsel committed error. So, this new fact does not change the analysis and conclusion of this Court. Accordingly, Mr. White's Petition for Writ of Habeas Corpus should be DENIED.

### III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." In cases where the petitioner's claims are procedurally barred, a district court must consider the following factors when determining whether it should issue a certificate of appealability: "(1) if the claim is clearly procedurally defaulted, the certificate should not be issued; (2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, (3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be

granted." *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006).

In this case, the Petition is without merit. Therefore, no certificate of appealability should be issued and the previously scheduled hearing set for October 21, 2014 is removed from the Court's docket.

**IV.    CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1.     The Petition for Writ of Habeas Corpus (Doc. No.1) be DISMISSED.

2.     A certificate of appealability should not be issued.

3.     All pending motions be DENIED as moot.

DATED this 12th day of September, 2014.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE